IN THE MATTER OF: V.M.C. Minor.
No. COA08-934
Court of Appeals of North Carolina
Filed December 16, 2008
This case not for publication
Thomas B. Kakassy, P.A., for Gaston County Department of Social Services, Petitioner-Appellee,.
Parker, Poe, Adams & Bernstein, L.L.P., by Jami Jackson Farris for Guardian ad Litem.
Carol Ann Bauer, for Respondent-Appellant Mother.
ARROWOOD, Judge.
Respondent-mother (Respondent) appeals from an order terminating her parental rights to her son, V.M.C. We affirm.
On 13 September 2005, the Gaston County Department of Social Services (DSS) filed a juvenile petition alleging that V.M.C. was an abused and neglected juvenile. The petition specifically alleged: (a) Respondent brought V.M.C. to the Health Department on the morning of 9 September 2005 due to his swollen leg and bruises on his abdomen; (b) Respondent said that the injuries occurred on 7 September 2005; (c) the doctor told Respondent and putative father to take V.M.C. to the hospital; and (d) Respondent did not bring V.M.C. to the hospital until 11:30 p.m. when DSS intervened. The petition also alleged that V.M.C., who was ten weeks old, was diagnosed with an acute fracture to the left tibia, a fracture to the 9th rib on the right side, an old fracture to the right tibia, and an old fracture to the 7th, 8th and 9th left rib. Finally, the petition alleged that based upon medical opinion, the swollen leg and bruising to the abdomen were consistent with the Respondent's explanation; however, the broken tibias and ribs were consistent with child abuse. DSS took nonsecure custody of V.M.C. Respondent subsequently entered into a Family Services agreement.
The trial court adjudicated V.M.C. abused and neglected on 21 March 2006. The disposition hearing was held on 11 April 2006. By order filed 28 April 2006, the trial court found that Respondent and the putative father were attending parenting classes and seeking independent housing. The trial court found that V.M.C's foster parents had agreed to "shared parenting" where the parents are allowed to visit frequently and help with the care of V.M.C. The trial court concluded that it was not in the best interest of V.M.C. to be returned to the custody of Respondent and the putative father.
At a review hearing held on 28 June 2006, the trial court found that an orthopedic pediatric physician determined V.M.C. did not have brittle bone disease and his injuries were consistent with "child abuse and inflicted trauma." The trial court ordered V.M.C. remain with DSS with bi-weekly unsupervised visits for Respondent and the putative father. The trial court also ordered Respondent and the putative father to follow through with the recommendations in the DSS "Review and Permanency Planning Report" if they wished to regain custody of V.M.C.
The trial court held review hearings in July, September and November of 2006. The trial court found that Respondent and the putative father had been compliant with their case plans and had independent housing. The trial court ordered a permanent plan of reunification and ordered V.M.C. to transition back to his parents' home. By review Order filed 19 January 2007, the trial court found that: (a) Respondent had visited with V.M.C. two of the eight available times; (b) Respondent had been evicted from her housing but did not inform DSS; and (c) Respondent and the putative father were no longer living together. The trial court continued the permanent plan of reunification.
In a review Order filed 12 April 2007, the trial court found that Respondent had been evicted in November 2006 and again in February 2007 and changed the permanent plan from reunification to a "concurrent plan of reunification and adoption." Another review hearing was held in July of 2007. The trial court found that: (a) Respondent had missed thirteen of the last thirteen visits; and (b) Respondent had not paid child support despite being employed. Based upon these findings the court ceased visitation with V.M.C. and sanctioned a "concurrent plan of guardianship and adoption."
On 1 October 2007, DSS filed a petition to terminate the parental rights of Respondent and the putative father. DSS alleged that grounds existed to terminate parental rights under N.C. Gen.Stat. § 7B-1111(a)(1)(neglect); N.C. Gen. Stat. § 7B-1111(a)(2) (failure to make reasonable progress); N.C. Gen. Stat. § 7B-1111 (a)(3) (failure to pay a reasonable portion of the cost of care for the child); and N.C. Gen. Stat. § 7B-1111 (a)(7) (willful abandonment). In February 2008, Respondent relinquished her rights and the trial court proceeded as to the putative father; however, within the statutory period Respondent revoked her relinquishment. By order filed 20 May 2008, the trial court concluded that grounds for termination of Respondent's parental rights existed under all four subsections and concluded that it was in the minor children's best interest to terminate Respondent's parental rights. Respondent appeals.
In her sole argument on appeal, Respondent contends the trial court abused its discretion in concluding during the dispositional stage that the termination of her parental rights was in the best interest of V.M.C.
In determining whether terminating the parent's rights is in the juvenile's best interest, the court shall consider the following:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen. Stat. § 7B-1110 (2007).
Here, the trial court made the following findings of fact to support the court's determination that it was in the best interests of the child to terminate Respondent-mother's parental rights:
1. VMC is, at the time of this Order's entry, two years and eleven months old, a developmentally crucial time in a child's life.
2. That permanency of residence and parental relationships are important factors in the normal healthy development of VMC.
3. That VMC has resided in foster care with foster parents [S.] and [D.] Hamilton since he was ten weeks of age.
4. That the Hamiltons have been approved as prospective adoptive parents for the child and are ready, available and willing to adopt VMC.
5. That based on the testimony of Ms. Hamilton, the Court finds her to be, without reservation, an excellent caretaker for the Juvenile VMC.
6. That during his placement with the Hamilton's the minor child has developed from withdrawn, shy child to a more verbal, outgoing and generally normal child in his interactions with his prospective adoptive parents.
7. That VMC has an observably strong bond with the Hamiltons, and refers to them as "Mom" and "Dad".
8. That the Guardian ad Litem, Melanie Richards, has introduced as evidence a report, which the Court adopts in all respects and incorporates herein.
9. That is highly likely that the Hamiltons will be allowed to adopt the Juvenile, VMC, should they otherwise have legal standing to do so.
10. That adoption of VMC is the Petitioner's present permanent plan for him, and termination of Respondent's parental rights would effectuate that plan.
11. That Respondent has no demonstrable bond with the Juvenile VMC and has not seen him for almost one year prior to this Order.
12. That the Juvenile's safety, if placed with the Respondent, cannot be assured, since no one has been conclusively identified as the perpetrator of the acts giving rise to his removal from Respondent's custody.
13. That the Respondent's current housing is wholly inadequate and impermanent, and that she has not articulated any acceptable plan for addressing this deficiency.
14. That the Hamiltons have provided safe, appropriate housing and care for VMC while he has been in their custody, and will be able to continue to provide such care.
15. That the Court fully restates and incorporates its earlier adjudicatory findings of fact in the Order, as if fully set out herein.
16. That it is in the best interests of the Juvenile, VMC that Respondent's parental rights be terminated.
A review of the record reveals that the trial court's findings are supported by court orders, Guardian ad Litem court reports, and testimony from Guardian ad Litem Melanie Richards and foster care mother [S.] Hamilton. Based upon the trial court's findings which reflect a rational reasoning process, we conclude that the trial court did not abuse its discretion in its determination that terminating the parental rights of Respondent was in the best interests of V.M.C.
We affirm the trial court's orders terminating the parental rights of Respondent.
Affirmed.
Judges HUNTER and GEER concur.
Report per Rule 30(e).